OPINION
We have before us the reopened appeal of defendant-appellant Larry A. Cechura. This court previously affirmed his convictions of Sexual Imposition and Sexual Battery that were imposed by a jury and his concurrent sentences of incarceration for four years and sixty days that were imposed by the court. We must now determine whether appellant's prior trial counsel, who was also his prior appellate counsel, provided ineffective assistance of counsel on four separately argued issues. For the following reasons, our prior decision affirming appellant's conviction is reaffirmed.
 STATEMENT OF FACTS
Fourteen-year-olds Rose Wade and Melissa Gahagan were babysitting at a home in Salineville, Ohio on December 27, 1998. The owners of the home returned late with appellant who had been drinking alcohol with them. Rose alleged that when she went downstairs to get a glass of water, appellant touched her breast, thigh and buttocks. After this incident, she proceeded upstairs and was joined soon thereafter by Melissa. Melissa testified that she was roused from her sleep on the couch by appellant who had pulled her pajama pants and underwear down and was performing oral sex on her.
Appellant gave a statement to police on December 31, 1998 in which he stated that he was extremely intoxicated on the night of the incident and that he did not remember seeing either of the alleged victims that night. As a result of Melissa's allegations, appellant was indicted for Sexual Battery, a third degree felony in violation of R.C. 2907.03(A)(3). With regards to Rose's allegations, appellant was indicted for Gross Sexual Imposition, a fourth degree felony under R.C. 2907.05(A)(1).
The case was tried on October 25, 1999. The court granted appellant's directed verdict motion on the Gross Sexual Imposition charge as it heard no evidence of force or threat of force against Rose. Instead, with regards to the alleged offense against Rose, the court instructed the jury on Sexual Imposition, a third degree misdemeanor under R.C.2907.06(A)(1). The jury found appellant guilty of Sexual Battery for the acts against Melissa and of Sexual Imposition for the acts against Rose.
A sentencing hearing was held on November 18, 1999 where the court sentenced appellant to sixty days on the Sexual Imposition charge and four years on the Sexual Battery charge to run concurrently. The case was appealed to this court. We overruled four assignments of error dealing with sufficiency of the evidence, weight of the evidence on the intoxication issue, instructions on the lesser included offense, allowing verbal testimony on appellant's statement instead of the tape-recorded conversation, and failure to impose a minimum sentence. We then sustained an assignment of error dealing with a misstatement in the sentencing entry and remanded for deletion of any reference to habitual sexual offender and insertion of a specific finding that appellant is not a habitual sexual offender. State v. Cechura (May 8, 2001), Columbiana App. No. 99CO74, discretionary appeal not allowed, (Sept. 5, 2001), Supreme Court No. 01-1147.
On August 3, 2001, new appellate counsel filed a timely application for reopening under App.R. 26(B), alleging that prior appellate counsel, who was also trial counsel, failed to assert as assignments of error various instances of her own ineffectiveness. We reopened the appeal on September 19, 2001. The case was fully briefed by December 24, 2001.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant's sole assignment of error provides:
 "APPELLANT CECHURA WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN THESE PROCEEDINGS."
In order to prevail on a claim of ineffective assistance of counsel, the defendant has the burden to establish two things: (1) that counsel's performance was deficient and (2) that counsel's deficiency prejudiced the defense. State v. Reynolds (1998), 80 Ohio St.3d 670, 674, citingStrickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonableness. Id. The defendant must produce evidence that counsel acted unreasonably by substantially violating essential duties owed to the client. State v.Sallie (1998), 81 Ohio St.3d 673, 674.
Because attorneys are presumed competent, reviewing courts refrain from second-guessing strategical, tactical decisions and strongly presume that counsel's performance falls within a wide range of reasonable legal assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558. Hence, to justify a finding of ineffectiveness, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. It has also been noted by this court that a defendant is not guaranteed the right to the best or most brilliant counsel. State v. Christman (May 28, 1999), Monroe App. No. 786, at 19; State v. Burley (Aug. 11, 1998), Mahoning App. No. 93-CA-204, at 3.
Upon demonstrating counsel's deficient performance, the defendant then has the burden to establish prejudice to the defense as a result of counsel's deficiency. Reynolds, 80 Ohio St.3d at 674. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that, were it not for serious errors made, the outcome of the trial would have been different. Strickland,466 U.S. at 695-696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. In other words, if there is a reasonable probability that the result would have been different, then the actual result was unreliable and thus fundamentally unfair. Carter,72 Ohio St.3d at 558.
With the pertinent law on ineffective assistance of counsel set forth, we shall now proceed to analyze each of the four allegations of ineffective assistance which are presented as subassignments of error.
 SUBASSIGNMENT OF ERROR NUMBER ONE
Appellant's first allegation of ineffective assistance of counsel is as follows:
 "TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO QUESTION OR OTHERWISE CHALLENGE JUROR THARP IN THE VOIR DIRE STAGE OF THE TRIAL."
During voir dire, the court asked the prospective panel of jurors if they or members of their immediate families have been the victim of a sexual criminal offense. Juror Tharp responded, "Yes, my aunt was murdered four years ago in Columbiana County. Raped and murdered at a bar." The court explained to Juror Tharp how he did not want anyone to begin with a presumption of guilt or to take out any past feelings on appellant. (Tr. 17-18). The court asked Juror Tharp if he could be fair to appellant, and Juror Tharp responded in the affirmative. (Tr. 18).
Thereafter, the state questioned Juror Tharp and ascertained that the matter was handled by the county prosecutor's office and investigated by the county sheriff's office. (Tr. 26). Juror Tharp answered that he was satisfied with the actions of those agencies. (Tr. 27). In general, the entire panel was asked: whether they could decide fair and impartially; whether they would begin with an open mind; whether they would follow the court's instructions; whether they would not hesitate to acquit if the state failed to meet its burden of proof beyond a reasonable doubt; and whether they would later feel embarrassed if they rendered a verdict of acquittal.
Appellant argues that because Juror Tharp's aunt was raped and murdered, he may have been predisposed to find against appellant, who is accused of a sexual offense. Appellant argues that counsel should have first sought to have Juror Tharp excused for cause, and if this did not work, then counsel should have exercised a peremptory challenge to excuse this juror. Appellant also argues that counsel should have at least made her own inquiries to Juror Tharp.
The reasons for granting a challenge for cause are set forth in Crim.R. 24(B). Relevant to the case at bar, Crim.R. 24(B)(9) provides that a challenge for cause is in order if the juror's state of mind evinces enmity or bias toward the defendant. This division then specifically states that no person shall be excused for cause by reason of a previously formed opinion with reference to guilt if the court is satisfied from examination of the juror that he will render an impartial verdict. Crim.R. 24(B)(14) then sets forth the following catch-all provision, "otherwise unsuitable for any other cause to serve as juror."
Appellant's counsel successfully challenged a juror for cause who stated that something happened to his daughter when she was young and that he might have a hard time being fair. (Tr. 54). Another juror was excused for cause based on the results of an off-the-record conversation with the juror. (Tr. 55). Counsel did not ask that Juror Tharp be excused for cause. This is most likely because Juror Tharp stated that he could be fair and impartial. The court was permitted to accept this declaration. See, e.g., State v. Allard (1996), 75 Ohio St.3d 482,495-496. Hence, we cannot say that the failure to attempt to have this juror excused for cause was ineffective assistance of counsel. See Statev. Christman (May 28, 1999), Monroe App. No. 786 at 24-25, citing Statev. Phillips (1995), 74 Ohio St.3d 72, 86.
Pursuant to Crim.R. 24(C), a noncapital felony defendant is entitled to four peremptory challenges. A decision to exercise a peremptory challenge generally falls within a wide range of reasonable conduct. The exercise of a peremptory challenge is a trial tactic which enjoys a strong presumption of validity. State v. Goodwin (1999), 84 Ohio St.3d 331, 341. Where the voir dire reveals that the juror can be fair and impartial and counsel accepts this pronouncement, a peremptory challenge need not be exercised. Id. See, also, Lakewood v. Town (1995), 106 Ohio App.3d 521.
In this case, the court elicited the juror's statement that he could be fair and impartial. Counsel must have believed his answer. There is no reason why counsel is required to re-inquire. The conduct of voir dire does not have to take any particular form, nor do specific questions have to be asked. State v. Evans (1992), 63 Ohio St.3d 231, 247. Counsel may have sought to avoid insulting the juror by asking him if he is sure that he can be fair. Counsel may have avoided questioning the juror further on the issue for fear of raising gruesome details which would stick in other jurors' minds and which are irrelevant to this case. Counsel may have considered how it would look to other jurors that their fellow panelist was removed because of his aunt, even though he said he could be impartial. The presumption of sound trial tactics does not appear to be overcome on this issue.
Moreover, it is not as if counsel left available peremptory challenges unused, which itself is not ineffective assistance where the contested juror states she can be fair and impartial. See State v. Carter (June 29, 2001), Columbiana App. No. 00CO32 at 5-6. Rather, counsel exercised all four peremptory challenges. How can we say that the unstated reasons for those challenges could not be as important as the fact that Juror Tharp's aunt had been raped and murdered four years ago? We do not know the reasons behind the other four challenges. Counsel was in the best position to determine whether the juror should have been questioned and to what extent or be released. State v. Murphy (2000), 91 Ohio St.3d 516,539.
Additionally, the offense against the juror's aunt was the ultimate victimization. We do not attempt to diminish the offenses committed in this case. However, neither victim was murdered, nor did any violent action occur. In fact, the offense against Rose is far removed from the offense of rape. Thus, the juror's statement that his aunt had been raped and murdered is not facially prejudicial requiring the juror to be peremptorily challenged per se.For the foregoing reasons, appellant's first subassignment of error is overruled.
 SUBASSIGNMENT OF ERROR NUMBER TWO
Appellant's second subassignment of error provides:
 "TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO CALL AS A DEFENSE WITNESS THE EMERGENCY ROOM PHYSICIAN/NURSE WHOSE RECORDS REFLECTED MATERIAL STATEMENTS FROM THE VICTIM WHICH WERE CONTRARY TO THE TESTIMONY OF THE VICTIM AT TRIAL."
Melissa and Rose told Melissa's mother about the incident two days later when her mom came to pick them up. Her mom then called the police and took Melissa to the hospital where she encountered a nurse and a physician. As aforementioned, Melissa's testimony established that she woke to appellant performing oral sex on her and that she then went upstairs and told Rose and the owners of the house. Testimony showed that the male homeowner went downstairs to talk to appellant after Melissa complained. Testimony also established that appellant remained at the house until morning.
To the contrary, it seems that some medical records state, that she was forced to give appellant oral sex, then she went downstairs, and then the owners removed appellant from the house. Appellant notes that Melissa's credibility was crucial to the state's case of Sexual Battery. Appellant states that her credibility could have been seriously undermined had counsel called the emergency room personnel who wrote a version of the incident in hospital records.
We should first note that Melissa explained that her mom "did most of the talking" at the hospital. (Tr. 163). Melissa's mother confirmed Melissa only participated "a little bit" in speaking with the male nurse in the emergency room because she was scared and embarrassed. (Tr. 96). Additionally, the fact that appellant stayed at the house even though medical records state that appellant was removed from the house barely has an impeaching effect. The female homeowner testified that after the girls complained about appellant, she told the male homeowner to go downstairs and to address appellant. Other parties also testified that appellant was to be ejected from the house. When the male homeowner went downstairs, appellant could not be awakened as he was passed out on the floor. The male homeowner then fell asleep on the love seat next to appellant. Appellant then left early that morning when Dan Raffle woke him up for work.
The records entry stating that Melissa "awakened and went downstairs" versus her testimony that she went upstairs could be slightly impeaching. However, it is not an issue that would so affect credibility that the outcome of the trial is unreliable. Regardless, Melissa's mother was cross-examined on this discrepancy, and she insisted that Melissa did not state that she went "downstairs" to hospital personnel. (Tr. 100). Melissa also testified that she did not say that she went "downstairs" after the incident. (Tr. 173).
As for the entry stating that appellant forced her to give him oral sex, this could be very impeaching. However, Melissa's mother and Melissa were both cross-examined on the correctness of the records. Melissa's mother was asked if they told the nurse that "she was forced to give oral sex * * *." Melissa's mother answered, "No, that's not what was said. * * * He has it backwards." (Tr. 99). Melissa testified that her mother told hospital personnel the correct version consistent with the testimony at trial. (Tr. 171). Most notably, counsel stated that the physician reported, "she was awakened by someone performing oral sex on her in the groin area." (Tr. 100). Hence, the nurse wrote something different than the physician. The physician's version is consistent with present testimony.
As can be seen, calling the nurse and physician to testify was not mandated. Counsel's decisions on which witnesses to call fall within the province of trial strategy and will not usually constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49. Counsel need not pursue every possible trial strategy. State v. Brown
(1988), 38 Ohio St.3d 305, 319. It is not as if counsel completely ignored the existence of the inconsistent medical records.
Counsel attempted to impeach Melissa's credibility based on what Melissa stated at the hospital. However, the physician's notes, Melissa's testimony, Melissa's mother's testimony, and the testimony of other witnesses impeached the nurse's notes more than the nurse's notes impeached Melissa. Melissa's mother is the one who did most of the talking, and she explained that the nurse got it backwards. However, the physician got it right. It is likely that the nurse would have admitted the mistake after being confronted with the physician's own notes. For the above reasons, there is no instance of ineffective assistance of counsel in the failure to call the nurse and physician to testify. This subassignment of error is overruled.
 SUBASSIGNMENT OF ERROR NUMBER THREE
Appellant's third subassignment of error alleges:
 "TRIAL COUNSEL WAS INEFFECTIVE IN CALLING DAN RAFFLE AS A DEFENSE WITNESS AND THEN ELICITING TESTIMONY FROM HIM OF A HEARSAY STATEMENT OF THE VICTIM REAFFIRMING THE ALLEGATIONS AT ISSUE IN THE TRIAL."
Dan Raffle arrived at the house in the morning to wake appellant for work. He was called to testify by the defense. He testified that he entered the house and saw appellant laying on the floor, the male homeowner laying on the couch, and Rose's sister sleeping on another couch. (Tr. 212). His testimony was most likely intended to contradict testimony that the girls woke Rose's sister and made her come upstairs after the incident with Melissa. His testimony was also used to contradict testimony about where appellant was sleeping and to confirm that appellant was clothed and still wearing his hat.
When defense counsel asked Mr. Raffle if he ever talked to Melissa about the allegations, Mr. Raffle responded:
"Yeah, it was approximately two weeks or so like that later. She was back over there at the same place, and I was over there visiting the neighbors. And I wanted to know what happened, so I just asked her what happened. And she proceeded to tell me. She said she thought that she was dreaming at first, and then she woke up and Mr. Cechura was performing oral sex or something like that to her." (Tr. 213).
Appellant contends that counsel should never have asked Mr. Raffle if he talked to Melissa about the allegations and should never have allowed him to state what the conversation entailed as it was hearsay and it served merely to bolster Melissa's story. However, counsel asked a yes or no question to which the witness gave a more substantive answer; counsel would have had to object to her own witness once she heard that the witness's last few words did not work in her client's favor. A finding of deficiency would be based upon speculation. Regardless, even if this were an example of deficient performance, we cannot say that this prejudiced the outcome.
Appellant cites State v. Nichols (1996), 116 Ohio App.3d 759, in support of his argument that the error was so prejudicial that he deserves a new trial. However, that case is not binding upon this court, and it is distinguishable. In that case, defense counsel failed to object when the police officer testified to three hearsay conversations which bolstered the victim's identification testimony and a nurse testified to a hearsay conversation that also bolstered the same testimony. However, the issue was not whether the victim was lying from the beginning but whether the victim was presently mistaken as to identifying features due to memory loss. This highly depended on consistency due to the fact that the identification did not take place until one year after the crime. Thus, hearsay conversations about what the victim said the perpetrator looked like one year before the identification were said to be prejudicial. Id. at 765 (also note that the court found many other instances of deficient performance and concluded by saying "all in all" the errors were prejudicial, which implies a cumulative error concept).
Here, the main defense is that Melissa has been lying from the minute she went upstairs to tell her friends. She told that story to her mother, the police, and the physician two days after the incident. The fact that she told Mr. Raffle the same story two weeks after the incident is expected and not defense-shattering; she related this story to the police before and at the jury trial. Hence, there is not a reasonable probability that but for this disclosure, appellant would not have been convicted. In accordance, this subassignment of error is overruled.
 SUBASSIGNMENT OF ERROR NUMBER FOUR
Appellant's final subassignment of error complains:
 "TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO ARGUE INTOXICATION AS AN AFFIRMATIVE DEFENSE DURING CLOSING."
Both parties presented evidence that appellant was intoxicated on the night of the alleged incidents. In closing, counsel focused on appellant's main defense that the victims' stories were not credible, particularly the story of Melissa. Counsel pointed out inconsistencies in various testimonial statements and argued why there existed reasonable doubt. Counsel asked how someone as drunk as appellant could secretly strip Melissa of a blanket, flannel pajama pants, and underwear without waking her. At another point, counsel again mentioned that appellant had been drinking. Counsel did not outline the defense of intoxication as negating the element of knowledge. Thus, appellant contends that counsel ignored the only viable defense in closing arguments.
The content of closing argument is generally part of trial strategy. InState v. Carter (June 29, 2001), Columbiana App. No. 00CO32, we found no serious error where counsel failed to tell the jury why the state did not prove the elements of domestic violence. We stated that appellate courts "will not resort to micro-management of closing arguments." Id. at 6, quoting State v. Hull (Dec. 3, 1999). Lucas App. No. l-98-1307. An attorney can render ineffective assistance where he wholly fails to present the defendant's theory of the case. For instance, it is ineffective to change the theory set forth in the defendant's testimony because by doing so, the defendant's credibility is damaged. State v.Smiley (Oct. 28, 1999), Cuyahoga App. No. 72026 (where the defendant testified that he did not strike the victim but the attorney argued in closing only that the defendant accidentally struck the victim). The reviewing court must consider the closing argument within the context of the entire record and ask whether the attorney abandoned the defendant's main theory of the case. See, e.g., State v. Goodwin (1999),85 Ohio St.3d 331, 337.
In the case at bar, appellant's main defense was that he did not commit the offenses. Support for this defense was presented in the form of credibility arguments. A secondary defense was, if the jury believes that he did engage in the conduct alleged, then he was too intoxicated to have the requisite state of mind, being knowledge. The court instructed the jury on intoxication. It can be considered sound trial strategy to avoid focusing on the alternative defense in closing since such a focus by counsel may leave the jury with the impression that the defendant is admitting the crime. Rather, counsel may wish to focus on the main defense and let the court instruct on the alternate defense of intoxication. Also, although the court was going to instruct on intoxication, the state did not mention the failure of the intoxication defense in its closing. As such, defense counsel may have realized that if she pushed the intoxication issue in her closing, the state would present a strong rebuttal closing argument. Finally, since the jury was given instructions on intoxication immediately after the closing arguments, there is no indication that a different closing would have produced a different outcome. See Carter, Columbiana App. No. 00CO32. Accordingly, this assignment of error is overruled.
Finally, appellant argues cumulative error. In reviewing our resolution of the four subassignments of error, this argument fails.
For the foregoing reasons, our prior decision affirming appellant's conviction is hereby reaffirmed.
Donofrio, J., concurs.
Waite, J., concurs.